# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

PHILLIP D. MCQUEEN,

     **Plaintiff,**

v.                              **07-CV-2092 (WJM)**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**                        **OPINION**

                                           **HON. WILLIAM J. MARTINI**

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065

(*Counsel for Plaintiff*)

Kimberly L. Schiro
Office of the General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278

Vernon Norwood
Social Security Administration
Office of the General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278

(*Counsel for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.**:

Plaintiff Phillip D. McQueen brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("Act") as amended, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). On appeal, Plaintiff contends that the Commissioner's final administrative decision is not based on substantial evidence and so must be reversed or remanded. For the reasons articulated below, the Commissioner's decision is **AFFIRMED**.

I.      **BACKGROUND**

Plaintiff is 60 years old and holds a Master's degree in Education. (Tr. at 203.)[1] Plaintiff worked as an elementary and junior high school teacher from 1997 to 2004. (*Id.* at 204–05.) Plaintiff claims that since 2004 he has been disabled because he suffers from back pain, anxiety and depressive disorders, and other ailments. (*Id.* at 202, 208, 220.)

In 2004, Plaintiff filed for DIB, originally alleging disability on the basis of diabetes, hypertension, and an enlarged prostate. That application was denied in 2005. (*Id.* at 22.) Plaintiff sought a reconsideration of that ruling, which was also denied. (*Id.* at 32.) Plaintiff next sought review by an Administrative Law Judge ("ALJ"). (*Id.* at 12.) ALJ Michal L. Lissek conducted a

---

[1] "Tr." refers to the administrative record.

2

hearing in August 2006.  (*Id*. at 198–228.)  The ALJ found Plaintiff not disabled and therefore not

entitled to DIB under the Act.  (*Id*. at 12–17.)  The Appeals Council declined to review that decision.

(*Id*. at 3–5.)  Plaintiff then sought relief in this Court.

In a written decision, the ALJ found Plaintiff not disabled and therefore not entitled to DIB

under the Act.  The ALJ specifically held that Plaintiff suffered from "a 'severe' impairment

involving lower back pain, dysthymic disorder, and anxiety disorder" but that he did not suffer from

an impairment that met or equaled in severity an impairment listed in appendix 1 of 20 C.F.R. part

404, subpart P.  (*Id*. at 14.)  The ALJ also found that Plaintiff's subjective complaints of disabling

pain were not entirely credible because the objective medical findings could not support the pain

alleged.  (*Id*. at 15.)  Thus, the ALJ concluded that Plaintiff is able to perform "the full range of light

work" and "has not had any non-exertional limitations."  The ALJ therefore denied Plaintiff benefits

because his past relevant work—school teacher—fell "within the light exertional category of work."

(*Id*. at 16.)  Plaintiff asks this court to reverse or remand the ALJ's decision on the grounds that it

is logically impossible, contradictory, and not based on substantial evidence.

## II.    STANDARD OF REVIEW

This Court exercises plenary review over the ALJ's legal conclusions and is bound by the

ALJ's factual findings if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259,

262 (3d Cir. 2000).  Substantial evidence "does not mean a large or considerable amount of

evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable

person might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation omitted); *see Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d

Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance").  This Court's inquiry then is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached.

## III.    DISCUSSION

An ALJ considering a claim for disability benefits must apply a five-step sequential evaluation process.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); 20 C.F.R. § 404.1520.  At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  In step two, the ALJ must determine whether the claimant is suffering from an impairment or combination of impairments that is "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant cannot show that his impairment is "severe," he is ineligible for disability benefits.  *Id*.  However, if the claimant demonstrates a "severe" medical impairment, the ALJ must determine in step three whether the impairment meets or exceeds an impairment listed by the Commissioner.[2]  20 C.F.R. § 404.1520(a)(4)(iii).  If a match is found, the ALJ enters a finding of disability.  *Id*.  If there is no match, the ALJ must proceed to steps four and five.  20 C.F.R. § 404.1520(e).

In step four, the ALJ must decide if the claimant retains the residual functional capacity to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant has the burden of demonstrating his inability to perform such work.  *Burnett*, 220 F.3d at 118.  If the claimant does not have the capacity to resume past work, the evaluation will continue to the fifth step.  *Id*.  At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing some other work available in the national economy, taking into

---

[2]The Commissioner's list is located at appendix 1 to 20 C.F.R. part 404, subpart P.

4

consideration the claimant's age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot perform other work in the national economy, the ALJ must grant disability benefits.  *Id*.

In this case, the analysis proceeded to step four and ended with a determination that Plaintiff is not disabled within the meaning of the Act.  The ALJ determined at step one that Plaintiff did not engage in substantial gainful activity during the disability period alleged.  The ALJ moved to step two and found that Plaintiff "has had a 'severe' impairment involving lower back pain, dysthymic disorder, and anxiety disorder."  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of those included in the Listing of Impairments provided in appendix 1 to 20 C.F.R. part 404, subpart P.  (Tr. at 16.)  The ALJ's analysis ended at step four, where he concluded that Plaintiff retains the residual functional capacity to perform "the full range of light work," which includes Plaintiff's past relevant employment as a school teacher.

In challenging the ALJ's decision, Plaintiff presents two arguments.  First, he argues that the ALJ's finding that Plaintiff "has not had any significant non-exertional limitations" is incompatible with the ALJ's step-two finding of "a 'severe' impairment involving lower back pain, dysthymic disorder, and anxiety disorder."  (Pl. at 13–15.)[3]  Second, based on his assumption that the ALJ found severe non-exertional limitations, he argues that the ALJ could not, at step four, find Plaintiff able to perform "the full range of light work."  (*Id*. at 14–16.)[4]

_____

[3]"Pl." refers to the Plaintiff's brief.

[4]At least, these seem to be his arguments.  Plaintiff's brief does not lend itself to straightforward analysis.  For instance, he writes that "[i]t is the decision's decision that plaintiff suffers severe non-exertional/psychiatric restrictions, while at the same time it is the decision's decision that plaintiff suffers no non-exertional limitations.  These sides of the same coin cannot exist on that same coin."  (Pl. at 17.)

5

Plaintiff's argument suffers from two fatal flaws.  First, Plaintiff mistakenly assumes that the ALJ found that he had a severe non-exertional impairment.  But the ALJ actually found that Plaintiff suffered from a severe impairment that involved a combination several different ailments, only some of which were non-exertional.  The ALJ did not find that Plaintiff's non-exertional impairments were severe by themselves.   Second, based on the erroneous conclusion that the ALJ found his non-exertional impairments to be severe, Plaintiff argues that such a finding is incompatible with the ALJ's later finding that Plaintiff was capable of the full range of light work.  The Court disagrees and finds that the ALJ's conclusion that Plaintiff was capable of the full range of light work is compatible with its earlier findings and furthermore is supported by substantial evidence.

A.     **The ALJ's Finding That Plaintiff Does Not Suffer From a Severe Non-Exertional Impairment Was Adequate and Supported by Substantial Evidence.**

Plaintiff argues that the ALJ's finding early in the opinion that Plaintiff has a "'severe' impairment involving lower back pain, dysthymic disorder, and anxiety disorder" is incompatible with the ALJ's later finding that Plaintiff "has not had any significant non-exertional limitations." (Pl. at 13–15.)  The Court disagrees.

As explained above, step two of the disability analysis requires the ALJ to determine whether the claimant suffers from an impairment that is "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  This analysis requires consideration of both strength-based—or "exertional"—limitations and non-strength-based—or "non-exertional"—limitations.  20 C.F.R. § 404.1569a.  But the regulations require the ALJ to consider the claimant's individual impairments holistically and determine whether their combined effect is a severe impairment.  The regulations expressly preclude an examination of whether each individual impairment is severe:  "we will consider the combined effect of all of

6

your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523.

Here, the ALJ correctly applied the aforementioned regulations. After looking at the record, the ALJ found that Plaintiff's individual impairments when considered together constituted a severe impairment. (Tr. at 16.) As mandated by section 404.1523, the ALJ did not consider whether these impairments individually would each qualify as a "severe" impairment. It was not illogical for the ALJ to then find that some of these impairments, Plaintiff's non-exertional impairments, were insignificant.

Indeed, this latter finding—that Plaintiff's non-exertional impairments were insignificant—is supported by substantial evidence in the record. None of the physicians who examined Plaintiff, including his treating physician, found that Plaintiff suffered from significant non-exertional limitations, such as restricted memory, dulled senses, or inability to respond to supervision. *See* 20 C.F.R. § 404.1521.

Of particular relevance are the findings of Plaintiff's treating psychiatrist, Dr. Cruickshank. In August 2005, Plaintiff sought treatment from Dr. Cruickshank, who found that he was "cooperative, [but] vague" regarding his history, of neutral mood, and had "restricted affect." Cruickshank found his thought processes "circumstantial, but logical." Plaintiff denied experiencing any delusions, hallucinations, or suicidal thoughts. Cruickshank found him "fully oriented" with a "fair memory" and "fair" insight and judgment. He found Plaintiff "educated [and] verbal" but with "social constraints." On the diagnostic axes,[5] Cruickshank determined that Plaintiff suffered from

---

[5] Psychiatric diagnosis is divided into five parts, called axes. Axis I describes clinical disorders and conditions that need clinical attention such as depression, schizoaffective disorder, etc. Axis II describes personality disorders and mental retardation. Axis III describes general

an "adjustment disorder—[not otherwise specified]" and an "anxiety disorder—[not otherwise specified]." He also found that Plaintiff suffered from a "deformed" personality and endured "social [and] employment issues." Nevertheless, Cruickshank rated Plaintiff at "75–80" on the Axis V global assessment. (Tr. at 183.) In this range, symptoms are transient and expectable reactions to stress; impairment is slight. *See* Axis V: Global Assessment of Functioning Scale, http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp (last visited Feb. 19, 2008). Cruickshank did not prescribe any medication at this time. (Tr. at 183.)

When Plaintiff returned for a follow-up on September 23, Cruickshank found him "anxious" and "frustrated about his inability to 'get going.'" Cruickshank prescribed Ambien, a sleep aid. (Tr. at 184.) A month later, Plaintiff advised Cruickshank that he felt "much better since he started the sleep aid" and "ha[d] more energy to continue his job search and studies." Dr. Cruikshank noted that Plaintiff "seem[ed] more relaxed [and] less anxious." (*Id*.)

On September 11, 2005, Dr. Figurelli, a Disability Determination Services ("DDS") physician, evaluated Plaintiff for mental impairment. Dr. Figurelli noted that Plaintiff "presented as . . . mildly anxious [but] manifested no instability or lability of mood, no evidences of psychomotor retardation or psychomotor agitation, and no evidences of emotional dyscontrol." (*Id*. at 142.) Dr. Figurelli concluded that Plaintiff suffered from "Dysthymic Disorder, late onset"[6] and

---

medical conditions. Axis IV describes psychosocial and environmental problems. Axis V is a global assessment on a scale of 0 to 100, with 0 being minimal function and 100 being perfect function. DSM Disorders Diagnostic Criteria, http://psyweb.com/Mdisord/DSM_IV/jsp/dsm_iv.jsp (last visited Feb. 19, 2008).

[6]"Dysthymia, sometimes referred to as chronic depression, is a less severe form of depression but the . . . symptoms linger for a long period of time, perhaps years. Those who suffer from dysthymia are usually able to function adequately, but seem consistently unhappy." Chronic Depression (Dysthymia), http://www.webmd.com/depression/guide/chronic-depression-dysthymia (last visited Feb. 21,

"Anxiety Disorder, not otherwise specified." (*Id*. at 145.)  However, he also noted that he was unable "to ascertain the nature and severity of the current medical conditions that [Plaintiff] reportedly experiences." (*Id*. at 144.)  The only symptom Plaintiff reported of his depression was his inability to complete things.  Plaintiff also advised Dr. Figurelli that he experienced auditory and visual hallucinations, complaining of hearing "like an echo in the background" and seeing "like a spirit, a ghost."  Plaintiff also "acknowledge[d] a history of suicidal ideation." (*Id*. at 142.)

On September 15, Dr. Tan, also of the DDS, conducted another review.  Dr. Tan found that Plaintiff's "mood was cheerful, [his] affect was anxious, [and there were] no cognitive problems except for mild impairment of delayed recall." (*Id*. at 163.)  He concluded that Plaintiff suffered only mild restrictions on activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (*Id*. at 161.)  Dr. Tan disagreed with Dr. Figurelli's diagnosis of dysthymic disorder and found Plaintiff "not totally credible." (*Id*. at 163.)

Relying upon these medical reports and Plaintiff's own testimony and behavior at the hearing, the ALJ found that Plaintiff did not suffer from a severe mental impairment.  His assessment was supported by substantial evidence, particularly that of Plaintiff's own treating physician, Dr. Cruickshank.  Indeed, there appears to be significant agreement among the examining physicians that, however Plaintiff's non-physical difficulties are classified, they do not seriously impair his life.  For instance, when the ALJ asked Plaintiff for a specific example of when his asserted lack of concentration had affected his life, he was unable to provide one.  (*Id*. at 221.)  Moreover, Plaintiff reports that he is able to perform most of life's daily tasks.  He prepares his own meals, does his own

2008).

laundry and cleaning, navigates public transportation, follows instructions, handles his own finances, reads for pleasure, exercises, and attends church for as long as he can sit. (*Id*. at 60–67.) This Court thus finds that the ALJ's finding regarding the nature of Plaintiff's impairment was adequate and supported by substantial evidence.

**B.    The ALJ's Determination That Plaintiff Could Perform Light Work Was Adequate and Supported by Substantial Evidence.**

Plaintiff further argues that the ALJ could not, at step four, find Plaintiff able to perform "the full range of light work" after having found that Plaintiff suffers from severe non-exertional impairments. (Pl. at 14–16.) Plaintiff compares his non-exertional impairment to blindness and deafness, noting than an individual may physically be able "to lift 200 pounds and walk and stand all day" yet have a severely restricted capacity due to his non-exertional limitations.

The Court disagrees. Notwithstanding that the ALJ actually found Plaintiff's non-exertional impairments insignificant and found only that when considered together Plaintiff's impairments were severe, as explained above, Plaintiff's argument suffers from a fatal flaw in logic. Specifically, Plaintiff fails to distinguish between the ALJ's analyses at step two and step four.

Steps two and four require distinct analyses. At step two, the ALJ need only find that there is an impairment or combination of impairments that impacts upon the claimant's ability to perform work related activities. Step two is essentially a threshold evaluation. 20 C.F.R. § 404.1521. It is a blunt and binary determination about whether an individual has a "severe impairment." It is at step four that the ALJ must make more nuanced findings about what the claimant is able to do. At step four, the ALJ determines the claimant's residual functional capacity, the very utmost that an

10

individual can do after considering the specific physical and mental limitations that affect his ability to perform work-related tasks.  20 C.F.R. §§ 416.945,  404.1545.

Given this framework, there was nothing inconsistent in the ALJ's finding that Plaintiff's severe limitation allowed him to engage in the full range of light work.  Indeed, an ALJ's finding of a claimant's residual functional capacity, such as ability to engage in light or even heavy work, presupposes that the ALJ has found the claimant to have a severe impairment.  The regulations thus clearly assume that a finding of severity does not mandate a specific residual functional capacity.

Furthermore, the ALJ's determination that Plaintiff's residual functional capacity allowed for light work is supported by substantial evidence.  "In making a residual functional capacity determination, the ALJ must consider all evidence before him."  *Burnett*, 220 F.3d at 120.  "[T]he ALJ may weigh the credibility of the evidence, [but] he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  *Id*.  Further, "[w]hen the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  An ALJ is also entitled to determine if subjective complaints of pain are consistent with both the objective medical evidence and other evidence on the record, including claimant's own statements.  20 C.F.R. § 404.1529; *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (The ALJ must "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").

Here, the ALJ found that Plaintiff retains the residual functional capacity to perform "the full range of light work," which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [and] a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling or arm or leg controls."  20 C.F.R. §

404.1567(b).  In making this assessment, the ALJ appears to have considered all of the evidence and to have given adequate reasons for rejecting the evidence he rejected.  Specifically, the ALJ credited the assessments of the DDS physicians over Plaintiff's "subjective complaints of disabling pain," (Tr. at 15) and the assessment of Plaintiff's treating physician, Dr. Elamir.

The record shows that Plaintiff suffers from a back impairment.  He complained of lower back pain as early as 2004.  (Tr. at 71.)  X-rays in 2005 and an MRI in 2006 evidenced "degenerative disc disease at L5/S1" and "mild segmental spinal canal stenosis [at] L4–L5."  (*Id*. at 125–26, 148, 190.)

The ALJ's conclusion that this back impairment allows Plaintiff to engage in the full range of light work is supported by substantial evidence.  In April 2005, Plaintiff reported only intermittent pain to Dr. Merlin of the DDS.  He reported that "sitting or standing too long worsens it while walking relieves it [and that] he can walk five blocks." (Tr. at 128.)  Merlin found that Plaintiff "is able to flex his spine forward 0 to 90 degrees, squat, and walk on his heels and toes."  Plaintiff also had "no difficulty getting up from a seated position or getting on and off the examining table."  Merlin detected "tenderness in the lumbar region" and diagnosed Plaintiff with low back pain, suggesting that he "[f]ollow-up with an orthopedist."  He found that Plaintiff "was able to sit, stand, walk, handle objects, hear, speak, and travel, but that he should not lift or carry heavy objects."  (*Id*. at 129–30.)

Plaintiff underwent another evaluation in September 2005.  At that time, Dr. Weber, a DDS physician, found Plaintiff's diagnosis essentially unchanged except that he was unable to squat and experienced some "sensory deficit" in both feet.  (*Id*. at 146–47.)

In October 2005, Dr. Pirone of the DDS prepared a physical residual functional capacity

12

assessment. (*Id.* at 165–72.) Pirone took into account Plaintiff's complaints of pain, Plaintiff's description of his own abilities regarding his daily life, the X-rays of Plaintiff's spine, and the April and September 2005 DDS reports. Pirone found that Plaintiff could occasionally lift 20 pounds and frequently lift ten. He found that Plaintiff could stand, walk, and sit with normal breaks for six hours out of an eight-hour workday. (*Id.* at 166.) Pirone found no limitations on Plaintiff's ability to push or pull. He noted that Plaintiff could occasionally stoop, kneel, crouch, and crawl. (*Id.* at 167.) The examinations and reports of these Doctors supports the ALJ's conclusion that Plaintiff can perform light work.

Plaintiff's treating physician provided some evidence to the contrary, but the Court finds that the ALJ was not required to accept this contrary evidence. Though generally the opinion of the treating physician must be given controlling weight, this is only true when that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Here, Plaintiff's treating physician Dr. Elamir filled out a report in September 2006 that suggests Plaintiff's pain prevents him from engaging in light work. However, Dr. Elamir's notes explaining the medical findings he made to support that assessment are completely illegible, as are several of his other findings, such as how many pounds Plaintiff can lift occasionally and frequently. (*Id.* at 194.) In this case, it is completely unclear as to what, if any, diagnostic techniques Elamir relied upon. The ALJ was therefore correct to credit the reports of other examining doctors over Dr. Elamir's report. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [given to] that opinion.")

13

Also, Plaintiff's testimony supports his contention that he cannot perform light work, but the Court similarly finds that the ALJ was not required to accept this testimony.  As explained above, an ALJ is entitled to determine if subjective complaints of pain are consistent with both the objective medical evidence and other evidence on the record, including claimant's own statements.  Here, the evidence in the record cannot be squarely reconciled with Plaintiff's testimony of debilitating pain. By his own assertions, Plaintiff is able to conduct much of the business of everyday life—cooking, cleaning, shopping, bathing, etc.  (*Id*. at 60–67.)  He walks independently without the assistance of a cane or other device.  (*Id*. at 147.)[7]  During his psychiatric evaluation with Dr. Cruickshank in August 2005, a year after his complaints of back pain began, he advised that he was not in any pain at all.  (*Id*. at 111.)  A month later, he advised Dr. Figurelli that he "enjoys exercising as his primary leisure time activity."  (*Id*. at 143.)  It is hard to see how that statement can be reconciled with Plaintiff's testimony at the hearing that without treatment he "would actually be in a wheelchair." (*Id*. at 216.)  Ultimately, a reasonable person could have chosen to believe the DDS physicians over Plaintiff and Dr. Elamir, and that is all this Court need find to affirm.

Finally, it is worth noting that the ALJ correctly found that a residual functional capacity of light work allowed Plaintiff to return to his past relevant work as a school teacher.  In making this determination, the ALJ relied upon Plaintiff's testimony concerning the demands of his job (*id*. at 204) and consulted listing number 092.227-010 of the Dictionary of Occupational Titles to determine that school teacher falls into the light exertional category.[8]  *See* 20 C.F.R. §  404.1560(b)(2) (The

---

[7]Plaintiff's assertions regarding the distance he his able to walk have varied over time, from two to three blocks in 2004 (*id*. at 65), to five blocks in 2005 (*id*. at 128), to "a block and a half [at] most" in 2006.  (*Id*. at 208.)

[8]Listing 092.227-010 refers to elementary school teachers.  Plaintiff testified that he taught both elementary and junior high school.  There does not appear to be a listing for junior

14

ALJ is entitled to rely on the Dictionary of Occupational Titles "to obtain evidence . . . to . . . determine whether [Plaintiff] can [perform] past relevant work."). Given then that Plaintiff retains the ability to return to his past relevant work, the ALJ correctly determined that he was not disabled within the meaning of the Act and properly denied him benefits.

## IV.    CONCLUSION

For the foregoing reasons, this Court finds that the ALJ's analysis was adequate and supported by substantial evidence. Consequently, the Commissioner's decision denying Social Security benefits to Plaintiff Phillip McQueen is affirmed.  An appropriate Order accompanies this Opinion._____

s/ William J. Martini

**William J. Martini, U.S.D.J.**

---

high school teacher.  Listing 091.227-010, however, describes the duties of high school teachers. These listings lack material differences, and both fall within the light exertional category.  Thus, whatever the distinction between elementary, junior high, and high school teachers, that distinction is not salient here.